# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOECEPHUS MITTS,           )
                                   )

               Plaintiff,    )
                                   )

vs.                              )     Case No. 3:15-CV-811-NJR-DGW
                                   )

PHIL MARTIN, STEPHEN DUNCAN,   )
RANDALL BAYLOR, BRADLEY RUE,   )
THOMAS SIMMONS, and MICHAEL   )
ZWILLING,                   )
                                   )

            Defendants.    )

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Motion for Summary Judgment filed by Defendants Phil Martin, Stephen Duncan, Thomas Simmons, Bradley Rue, Randall Baylor, and Michael Zwilling (Doc. 109). For the reasons set forth below, Defendants' Motion is granted in part and denied in part.

### PROCEDURAL BACKGROUND

Plaintiff Joecephus Mitts, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Lawrence Correctional Center ("Lawrence"). Mitts asserts he was denied adequate medical treatment for a rare skin cancer condition, mycosis fungoides, insofar as he was not allowed to see an outside specialist to monitor and treat his condition. Mitts also asserts he was assaulted by

correctional officers on May 14, 2014, after a nurse in the healthcare unit made false allegations of sexual assault against him. Following a screening of Mitts's original complaint pursuant to 28 U.S.C. § 1915A and the filing of a First Amended Complaint with leave of Court, Mitts is proceeding on the following claims:

> Count One: Eighth Amendment deliberate indifference claim against Phil Martin and Stephen Duncan for failing to provide Plaintiff with regular consultations with a cancer specialist; and

> Count Two: Eighth Amendment excessive force and failure to intervene claim against Randall Baylor, Bradley Rue, Thomas Simmons, and Michael Zwilling.

Defendants filed their motion for summary judgment on January 3, 2017 (Doc. 109). Because Defendants failed to file the requisite Rule 56 Notice with their motion, the Court filed the appropriate Notice and extended Mitts's response deadline (*see* Doc. 118). The Court again extended the response deadline on August 1, 2017 to August 15, 2017 (*see* Doc. 120). The Court subsequently provided another brief extension of time, and Mitts timely filed his response on August 22, 2017 (*see* Doc. 124).[1]

### FACTUAL BACKGROUND

Mitts suffers from mycosis fungoides, a rare type of cancer that affects his skin (Deposition of Joecephus Mitts, Doc. 110-1, p. 13). Mitts was diagnosed with this condition in 1997 and, after being transferred to Lawrence Correctional Center

---

[1] Mitts's response focuses, in its entirety, on Defendants' failure to produce video footage that he contends would vindicate his position with regard to the alleged assault that occurred on May 14, 2014. The Court addressed this issue in its June 7, 2017 Order on Mitts's Motion to Compel. In particular, Defendants explained that no video was maintained from May 14, 2014, as video is typically only kept for five days and is then recorded over. There is no indication that Defendants suppressed the evidence or acted in bad faith or against any record retention policy.

("Lawrence") in July 2013, he received the recommended treatments for his condition, including ultraviolet therapy ("UVB treatment") (*Id.* at 14, 18-19). From July 2013 to May 14, 2014, Mitts received UVB treatments three times per week and was sent for follow-up appointments with a specialist, Dr. Hurley, every eight weeks (*Id.* at pp. 18-19).

It is undisputed that Mitts underwent a UVB treatment on May 14, 2014; however, the parties dispute the events that took place on this date. According to Mitts, Nurse Brooks monitored his UVB treatment on May 14, 2014, and while he was in the booth receiving the treatment, the light started to burn his face, neck, and fingers (*Id.* at pp. 20-22). Mitts explained at his deposition that Nurse Brooks "lost it" when he complained of burning, they "had words," and he cussed at her (*Id.* at p. 23). Mitts avers that Nurse Brooks then went to the front desk and "the police" came in to take Mitts to the bullpen (*Id.* at p. 25). Mitts was escorted to the hallway and handcuffed by Defendant Lieutenant Baylor (*Id.* at p. 29).[2] Defendant Baylor twisted the handcuffs causing Mitts to feel as if his wrists were breaking (*Id.*). While Defendant Baylor was holding Mitts's handcuffs, Defendants Simmons, Rue, and Zwilling kicked, stomped, and punched Mitts in the head, back, and groin for a "good five minutes" (*Id.* at pp. 33-34). At his deposition, Mitts testified that he suffered from a swollen wrist and a "busted head" with a "dab of blood" following this incident and, although he asked Defendants for medical treatment, they denied him care (*Id.* at p. 38).

---

[2] In his deposition, Mitts refers to Randall Baylor as "Bailey;" however, this discrepancy appears due to an inadvertent error. Mitts identified Defendant Baylor as "Bayor" in his First Amended Complaint, and there is no indication Defendant Baylor is incorrectly named as a defendant in this action.

Defendants assert Mitts sexually assaulted Nurse Brooks during his treatment on May 14, 2014 (Affidavit of John Coe, M.D., Doc. 110-2, ¶ 22). Mitts was issued a disciplinary ticket for sexual misconduct and insolence and was ultimately found guilty of the charges (Doc. 110-1, p. 26).

After the incident on May 14, 2014, Mitts refused to go to the healthcare unit for his UVB treatments until he was ultimately transferred to Centralia Correctional Center ("Centralia") in July 2016 (Doc. 110-1, pp. 7, 43, 58). Due to his refusal to undergo his UVB treatments, Mitts's referrals to the outside specialist, Dr. Hurley, also ceased (*See id.* at p. 56). Mitts asserts Defendant Martin was responsible for this circumstance, as he was the healthcare administrator and approved all outside appointments (*Id.* at p. 44). According to Mitts, Dr. John Coe told him he was not scheduled for his follow-up appointments with the specialist because of Martin and was informed that if he continued to refuse his UVB treatments he would not be sent out to the specialist (*Id.* at p. 51). Defendant Martin also advised Mitts on one occasion that he would not be sent out so long as Mitts refused on-site treatment (*Id.* at p. 76). Mitts also spoke with Defendant Duncan, the Warden at Lawrence during the relevant time period, about whether he would be sent to an outside specialist, but Defendant Duncan failed to approve any referrals despite indicating he would look into the situation (*Id.*).

Dr. John Coe attests Mitts was not approved for follow-up appointments with Dr. Hurley because of his non-compliance with her treatment plan (Doc. 110-2, ¶¶ 30, 40). In particular, Dr. Coe asserts he consulted with Dr. Hurley and understood that if Mitts continued to refuse UVB therapy, there was no reason for him to come to her office (*Id.* at

¶ 31). Following his transfer to Centralia in July 2016, Mitts resumed his UVB treatments and was also sent out for appointments with Dr. Hurley (Doc. 110-1, p. 58).

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id*. The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted).

## I.     Count One: Deliberate Indifference

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Mitts must show first that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

A prisoner must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'." *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction

of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes*, 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)).

Defendants Martin and Duncan contend that, although Mitts suffers from a serious medical condition, they were not deliberately indifferent to Mitts's medical needs because they were not directly involved in treating his medical condition, and they had no role in scheduling outside appointments. Defendants also argue they were not deliberately indifferent to Mitts's medical condition because they neither delayed nor cancelled appointments with his outside specialist.

The Court quickly rejects Defendants' argument that they are not liable because they had no personal involvement in Mitts's medical care. When viewed in Mitts's favor, the evidence demonstrates these Defendants had some involvement in the scheduling or approval process for outside appointments. Although these Defendants may not have been directly involved in providing medical care, the claim against them is related to

scheduling and transfers for outside appointments, not the provision of medical treatment. Nevertheless, Mitts's claim of deliberate indifference against Defendants Martin and Duncan fails to survive summary judgment for the reasons set forth below.

### A. Defendant Phil Martin

The only evidence as to Defendant Martin's purported failure to provide Mitts with regular consultations with an outside specialist is Mitts's deposition testimony. Mitts testified that Dr. Coe told him he was not scheduled for his specialist follow-up appointments because of Defendant Martin. Mitts also testified that Defendant Martin was generally in charge of approving all outside appointments. There is no evidence, however, that Mitts communicated with Defendant Martin concerning his appointments. While Defendant Martin states he is familiar with Mitts and his request to be referred to Dr. Hurley, it was his understanding that medical professionals conducted a collegial review and determined to stop Mitts's referrals to Dr. Hurley because Mitts was no longer undergoing UVB therapy (Affidavit of Phil Martin, Doc. 110-3, ¶ 5).

Non-medical defendants, like Martin, can rely on the medical judgment of medical personnel. *Greeno,* 414 F.3d at 655-56 (quoting with approval *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). They cannot, however, "simply ignore an inmate's plight." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016). If Mitts's communication to Martin "in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety,'" he can be found deliberately indifferent to Mitts's serious needs. *Vance v. Peters*,

97 F.3d 987, 993 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Here, there is no evidence Mitts provided Defendant Martin with sufficient notice to alert him that he was not being referred to a specialist and that such circumstance amounted to an excessive risk to his health. Thus, Defendant Martin did not ignore Mitts's plight and was entitled to rely on the judgment of medical personnel and their decision to halt Mitts's referrals to Dr. Hurley. For this reason, the Court finds Defendant Martin was not deliberately indifferent to Mitts's medical needs and is entitled to judgment as a matter of law as to Count One.

### B. Defendant Stephen Duncan

Mitts's evidence as to Defendant Duncan is similarly scant. Mitts testified that Defendant Duncan is a party to this action because he has to sign off on inmate movements, such as transfers to an outside specialist. Mitts further testified that he spoke with Defendant Duncan a few times about whether or not he would see an outside specialist, but he gave no details as to what he specifically relayed about his medical condition and treatment during these conversations. Simply put, the record is bereft of any evidence that Defendant Duncan was aware of Mitts's medical condition or that he understood the role an outside specialist had on his treatment. Even when viewed in Mitts's favor, the evidence is insufficient to demonstrate that Mitts's communications with Defendant Duncan were sufficient to notify this Defendant of an excessive risk to Mitts's health. *See Vance*, 97 F.3d at 993. Thus, the Court cannot say that Defendant Duncan was deliberately indifferent in deferring to medical personnel in making decisions regarding Mitts's treatment. Defendant Duncan is entitled to judgment as a

matter of law as to Count One.

## II. Count Two: Excessive Force and Failure to Protect

"The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). "In cases involving the claimed use of excessive force, 'the core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Outlaw*, 259 F.3d at 837 (quoting *Hudson*, 503 U.S. at 7). "In conducting this inquiry, a court must examine a variety of factors, including 'the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner.'" *Id.* With regard to the last factor, the Seventh Circuit recognizes that a plaintiff need not demonstrate a significant injury to state a claim for excessive force; however, "a claim ordinarily cannot be predicated on a *de minimis* use of physical force." *DeWalt v. Carter*, 224 F.3d 607, 620 (7th Cir. 2000) (emphasis added) (citing *Hudson*, 503 U.S. at 5). Indeed, the use of *de minimis* force is necessarily precluded from the Eighth Amendment's prohibition on cruel and unusual punishment, provided that such force is not "repugnant to the conscience of mankind." *Outlaw*, 259 F.3d at 838 (quoting *Hudson*, 503 U.S. at 9-10).

Mitts's excessive force and failure to protect claim against Defendants Baylor, Rue, Simmons, and Zwilling relates to the events that allegedly occurred on May 14,

2014, wherein Mitts testified he was assaulted and beaten by Rue, Simmons, and Zwilling for five minutes while Baylor twisted his handcuffs and held him down. Defendants argue they are entitled to judgment as a matter of law because there is no evidence Mitts suffered any actual harm or needed medical treatment and the use of such minor force (if actually used), was intended to restore discipline and escort Mitts to another area following complaints of a sexual assault.

If Mitts's testimony is credited, as it must be here, Defendants' arguments necessarily fail. As mentioned above, the central inquiry in claims of excessive force is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Outlaw*, 259 F.3d at 837. Although Mitts admits he was having words with Nurse Brooks and cussed her out prior to the alleged assault, a five-minute beating does not appear to be an appropriate response or one tailored to restoring discipline. Moreover, the Court disagrees with Defendants' characterization that the force applied was minor. In support of their argument, Defendants cite to Mitts's injuries and assert there was no need for medical treatment. In making such an argument, Defendants mischaracterize Mitts's deposition testimony. Specifically, Mitts asserted he requested medical treatment for his injuries, but his request was denied. Mitts also indicated he was kicked in the face, head, back, and groin. Regardless of the injuries suffered, Mitts's testimony establishes more than a *de minimis* use of force. Defendants Baylor, Rue, Simmons and Zwilling are not entitled to judgment on Count Two.

Insofar as Defendants Baylor, Rue, Simmons, and Zwilling included a general, "catch-all" argument concerning qualified immunity in their motion for summary judgment, the Court finds this argument unavailing as it is clearly established law that a prison official cannot apply force maliciously and sadistically to cause harm, as is the allegation for which there is some evidentiary support.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment filed by Defendants Phil Martin, Stephen Duncan, Thomas Simmons, Bradley Rue, Randall Baylor, and Michael Zwilling (Doc. 109) is **GRANTED in part and DENIED in part**. Defendants Phil Martin and Stephen Duncan are **DISMISSED with prejudice**.

Mitts is now proceeding only on Count Two, an Eighth Amendment excessive force and failure to intervene claim against Defendants Randall Baylor, Bradley Rue, Thomas Simmons, and Michael Zwilling. The Court **DIRECTS** Magistrate Judge Wilkerson to recruit counsel to represent Mitts at trial and to hold a status conference to discuss potential firm trial dates.

**IT IS SO ORDERED.**

**DATED:   September 14, 2017**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**